CHRISTINE CLEMINS and ROSE
ROWLEY, individually and on behalf of
all others similarly situated,

Case No.

Plaintiff,

v. **JURY TRIAL DEMANDED**

GE MONEY BANK,

Defendant.

**CLASS ACTION COMPLAINT**

Plaintiffs, Christine Clemins and Rose Rowley individually and on behalf of all others similarly situated (the "Class"), brings this class action against Defendant **GE Money Bank** (referred to as "GE MONEY BANK" or the "Company"). Plaintiffs seeks certification of this action as a class action. Plaintiffs, by and through their attorneys, submits this Class Action Complaint (the "Complaint") against the Defendant named herein and alleges as follows:

**NATURE OF THE ACTION**

1.      This proposed class action stems from the illicit activities undertaken by GE MONEY BANK while marketing and selling products associated with its credit cards known as "CARD SECURITY", "ACCOUNT SECURITY", "Payment Protection," and other monikers that all offer similar coverage (hereinafter collectively referred to as "Payment Protection").

2.      GE MONEY BANK violated Wisconsin statutory and common law by charging consumers for Payment Protection who either did not want it or were not entitled to benefits

from the service, and by the unfair, misleading, and bait-and-switch manner in which GE MONEY BANK has offered and administered claims for benefits by consumers.

3.      GE MONEY BANK violated the law by the deceptive and misleading manner in which it offers the Payment Protection plan to consumers, and the manner in which it administers claims for benefits by consumers.

4.      GE MONEY BANK markets Payment Protection through direct mail and telemarketing. It represents Payment Protection as a service that pays the required minimum monthly payment due on the subscriber's credit card account and excuses the subscriber from paying the monthly interest charge and the Payment Protection plan fee for a limited period of time, preventing the account from becoming delinquent, or, in some instances, cancels the debt on the subscriber's account, up to a maximum of $10,000.00 in debt cancellation. GE MONEY BANK touts to its customers that through this service it is "here to help you in times of need."

5.      Despite its simple explanation for marketing purposes, GE MONEY BANK's Payment Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible for consumers to determine what Payment Protection covers and whether it is a sound financial choice.

6.      GE MONEY BANK makes no effort to determine whether a cardholder is eligible for Payment Protection benefits at the time of sale. As a consequence, the Company bills thousands of retired persons (many of whom are senior citizens), along with the unemployed, those employed by family members, and part-time or seasonal Wisconsin residents, as well as disabled individuals, for Payment Protection coverage, even though their employment or health status prevents them from receiving benefits under the plan.

7.     Further, GE MONEY BANK makes no effort to determine whether subscribers become ineligible for Payment Protection benefits after they are enrolled in the plan. Accordingly, when subscribers' employment or health status changes, they will continue to pay for the product even though they may no longer be eligible for benefits under the plan.

8.     GE MONEY BANK requires customers to enroll in Payment Protection coverage *before* it provides subscribers with the terms and conditions of the plan.

9.     Given the confusing way the written materials present the terms and conditions of Payment Protection, it would be extremely difficult for a subscriber to decipher those provisions.

10.     GE MONEY BANK has established its "customer service" support in such a way that subscribers cannot easily cancel the plan or receive answers to benefit questions. It has established its "claim filing" system in a way to make it difficult for subscribers to file claims or receive benefits for filed claims.

11.     GE MONEY BANK does not refund Payment Protection premiums after it has denied subscribers' claims for Payment Protection benefits, nor does it address subscribers' continued obligations to pay the monthly fee for Payment Protection after a claim has been denied.

12.     Payment Protection is so confusing even as to those who enrolled on purpose as to when coverage is triggered, so restricted in terms of the benefits it provides to subscribers, and processing claims is made so difficult by GE MONEY BANK, that the product is essentially worthless, to say nothing of those on whom GE MONEY BANK imposed unauthorized charges.

13.     Despite this, GE MONEY BANK charges exorbitant prices for Payment Protection, charging every month $1.66 for every $100 in unpaid balance. Thus a customer who

3

carries a $100 balance for a year pays $19.92 per annum for Payment Protection, paying an additional 19.9 percent of balance on top of what he or she is already paying in interest.

14.     GE MONEY BANK knows that few those cardholders who choose to pay for Payment Protection will ever receive benefits under the plan and even for those who do receive benefits, the amounts paid in "premiums" will usually exceed any benefits paid out.

15.     As a result of its misleading and deceptive marketing practices in connection with sales of Payment Protection, GE MONEY BANK has increased its profits by many millions of dollars, all thanks to a product that does not provide the benefits promised to thousands of Wisconsin residents who are nevertheless charged for the product month in and month out.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that:

      (a)     This is a class action involving 100 or more class members,

      (b)     Plaintiffs, citizens of the State of Wisconsin, are diverse in citizenship from Defendant GE Money Bank, which has a principal place of business in Utah.

17.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

      (a) The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

      (b) There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 87 herein;

      (c) This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

            i.     questions of law and fact enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

ii.    a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

iii.    the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

iv.    there are no unusual difficulties foreseen in the management of this class action.

18.    The Court has personal jurisdiction over GE MONEY BANK, which has at least minimum contacts with the State of Wisconsin because it has conducted business there and has availed itself of Wisconsin's markets through its promotion, sales, and marketing efforts.

19.    This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

20.    This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

**PARTIES**

21.    Plaintiff Christine Clemins ("Ms. Clemins") is a resident of Cudahy, Wisconsin. Ms. Clemins applied for and received the Card Security Program on her Wal-Mart Credit Card and the Account Security Program on her Sam's Club Credit Card, both of which are issued by GE MONEY BANK, but has not received any benefit from her participation in Payment Protection. Since 2004, Ms. Clemins has had a Wal-Mart Credit in her name, issued from GE MONEY BANK, and bearing Payment Protection features. Since 2005, Ms. Clemins has had a Sam's Club Credit Card in her name, issued from GE MONEY BANK, and bearing Payment Protection features.

22.    Plaintiff Rose Rowley ("Ms. Rowley") is a resident of Niagara, Wisconsin. Ms. Rowley has had the Card Security Program on her GE MONEY BANK credit card, but has not

received any benefit from her participation in Payment Protection. Since 2004, Ms. Rowley has had a Wal-Mart Credit Card in her name issued from GE MONEY BANK bearing Payment Protection features.

23.    Upon information and belief, Defendant GE Money Bank ("GEMB") is a federal savings bank with its principal place of business in Salt Lake City, Utah. GEMB is a wholly owned subsidiary of GE Consumer Finance, Inc., a consumer lending unit of General Electric Company and its holding company, General Electric Capital Corporation.

## FACTUAL ALLEGATIONS

24.    Upon information and belief, GE MONEY BANK offers Payment Protection to all its credit card customers, but aggressively markets this product to vulnerable Wisconsin consumers who fall into the subprime credit category, or customers who have low credit limits because of impaired credit ratings.

25.    GE MONEY BANK markets Payment Protection as a service that will safeguard subscribers' credit card accounts by either temporarily canceling the required minimum monthly credit card payments due in certain highly restricted circumstances, or, in some other more limited instances, permanently canceling the subscribers' debt on the account, up to a maximum of $10,000.00. In the former circumstances, the subscribers are also not required to pay the monthly interest charges or the Payment Protection plan fee for the month in question.

26.    GE MONEY BANK sells Payment Protection to consumers through a number of different channels, including direct mail marketing, in which it may ask that the consumer "check the box" to initiate the plan, through telemarketing, where the consumer may be asked to press a button on the telephone keypad to approve initiation of the plan, or through unilaterally imposing the Payment Protection feature on a consumer's credit card.

6

27. GE MONEY BANK shifts its burden and duty of full disclosure prior to the sale to the customer and requires subscribers to decipher the terms of the product <u>after it has already been purchased</u> and to then take action to cancel it. The consumer must affirmatively cancel the Payment Protection "within 60 days" in order to get the charged fees refunded.

28. Even if the subscriber is later provided with written materials from GE MONEY BANK, it is virtually impossible for the subscriber to determine all of the exclusions and limitations of Payment Protection, or the value of the product, based on what is provided.

29. Upon information and belief, GE MONEY BANK imposed charges for "Payment Protection" upon Wisconsin consumers even though individual consumers did not request the product or clearly assent to pay for the product in writing after having the opportunity to review its governing terms and conditions.

30. In some instances, Payment Protection has been unilaterally imposed upon consumers. In other instances, no written materials explaining the terms and conditions were ever provided to subscribers. If Payment Protection is imposed and no written materials are provided, the only way subscribers could ever know they have been enrolled in Payment Protection and are being charged for this product is from noticing a line item fee listed on their monthly credit card statements. Even if GE MONEY BANK sent written materials to consumers who did not enroll, they would have no reason to look for or review such materials.

31. This form of enrollment, known as "slamming," can be undertaken in a number of different ways.[1] However, every slamming victim was enrolled without their consent. That is,

---

[1] For a thorough explanation of how credit card companies "slam" customers with financial products like Payment Protection, see the Complaint filed by the Minnesota Attorney General against credit card issuer Discover Financial Services, attached hereto as Exhibit A.

they did not agree to contract with GE MONEY BANK for Payment Protection and did not assent to pay for Payment Protection, regardless of the terms and conditions of the plan.

32.     The terms of GE MONEY BANK's Payment Protection program are varied, complicated and always changing. However, all of the various plans provide for some form of benefit upon the occurrence of "Covered" or "Protected" Events including *Involuntary Unemployment, Leave of Absence, Disability, Hospitalizaiton, Nursing Home Care, Terminal Medical Condition,* and *Loss of Life* each of which are strictly defined by GE MONEY BANK.

33.     The restrictions, limitations and exclusions associated with these Payment Protection covered events and the proofs required to establish them are expansive and constantly evolving.

34.     The telephone marketing scripts and the written materials provided by GE MONEY BANK are incomplete, indecipherable, misleading and obfuscatory.

35.     According to the written materials, which are only provided <u>after</u> subscribers have already been enrolled in the plan, the following restrictions on Payment Protection are imposed:

(a)     Payment Protection benefits do not apply to persons that are self-employed or employed by family members or members of the same household;

(b)     Payment Protection benefits do not apply to persons employed part-time, seasonally, or in a non-permanent capacity;

(c)     Payment Protection benefits do not apply to retired persons;

(d)     Payment Protection benefits do not apply for the first 30, and sometimes 90, days of unemployment, leave of absence, or disability;

(e)     Payment Protection benefits do not apply to persons who have not held their job for at least 60 days;

(f)     Payment Protection benefits do not apply if you qualify for state or federal unemployment benefits;

(g)  Payment Protection benefits do not apply unless you are eligible for state unemployment benefits and have registered within 15 days of the "Occurrence Date" at a "recognized employment agency";

(h)  Payment Protection coverage is limited to one benefit approval per calendar year;

(i)  Payment Protection benefits require proof of continuous physician's care for the entire period of benefits; and

(j)  Payment Protection benefits require the continued payment of all required monthly payments on the card, even while a person has to wait the through the 90 days of unemployment, leave of absence, or disability before applying for benefits, as well as during the entire application for benefits process, and all the way up through approval.

However, because these restrictions are in small print and in incomplete, indecipherable, misleading and obfuscatory language, they are not readily comprehensible to subscribers.

36.  Upon information and belief, GE MONEY BANK is in possession of information, such as date of birth and name of last employer, which would assist GE MONEY BANK in knowing whether a particular cardholder is eligible for Payment Protection.

37.  However, GE MONEY BANK makes no reasonable efforts and undertakes no investigation, including review of information in its possession regarding the cardholder, to determine if Payment Protection coverage would apply to the cardholder. Accordingly, GE MONEY BANK engages in marketing to enroll individuals in Payment Protection even when it has information in its possession indicating that the product may have limited or no value to the consumer.

38.  For instance, Wisconsin retired persons, many of whom are senior citizens, are charged for this product even though they are categorically excluded from receiving most or all of the benefits under the plan. In fact, GE MONEY BANK does not even ask customers whether they are retired.

9

39.     Similarly, GE MONEY Bank offers these plans to persons that are self-employed, employed by family members, employed by another member of the same household, employed part-time, and/or employed in seasonal work, even though all such persons are categorically excluded from receiving any benefits under the plan, and GE MONEY BANK nevertheless fails to affirmatively inform such persons of their ineligibility for benefits when they are enrolled. In fact, GE MONEY BANK does not even ask customers whether they are self-employed employed by family members, employed part-time, or employed in seasonal work.

40.     Further, terms such as "non-seasonal occupation", which a person cannot be employed in to be eligible for any benefits, and "permanent employee", which a person must be employed full-time as in order to be eligible for any benefits, are not adequately communicated or defined in any GE MONEY BANK materials.

41.     Additionally, benefits are unavailable or limited for disabled persons, but GE MONEY BANK nevertheless fails to affirmatively inform these individuals of the limitations on benefits when they are enrolled. In fact, GE MONEY BANK does not even ask customers whether they are disabled.

42.     Finally, Payment Protection subscribers cannot even apply for benefits under the unemployment, leave of absence, or disability portions of the program until they have satisfied these conditions (i.e. being unemployed, disabled or on a leave of absence) for a set period of time, sometimes as much as 90 days. Even at that point they may only file a claim for Payment Protection benefits that will still take an undisclosed and indeterminate amount of time to process before approval is granted, if it is granted at all. Nevertheless, to maintain eligibility in the program, and even have a chance to receive the benefits of the program, GE MONEY BANK requires that the consumer makes all required monthly payments on the card during this greater

than three month (and potentially indefinite) period. Thus, at the very time when a consumer most needs any benefits that Payment Protection may afford (e.g. when one loses their job), GE MONEY BANK requires its customers to wait many months before having any chance of getting this help they have been paying for every month, but all the while still having to continue to pay their monthly credit card bill to keep from automatically having their coverage in the program terminated by GE MONEY BANK.

43.     The cost of Payment Protection is a monthly charge of approximately $1.66 per $100 of either a subscriber's month-ending credit card balance or a subscriber's average daily balance on the credit card.

44.     For example, if a GE MONEY BANK credit card customer has a balance on a covered account of $10,000, as a Payment Protection subscriber, GE MONEY BANK charges the customer $166.00 that month just for Payment Protection coverage.

45.     Payment Protection also provides the added benefit to GE MONEY BANK of lowering the cardholder's available credit through the imposition of this additional fee. Further, the imposition of the fee creates a cycle of profitability for GE MONEY BANK, in that the fee itself increases subscribers' monthly credit balances, which in turn increases Payment Protection fees in upcoming months.

46.     "Customer service" is available for GE MONEY BANK s Payment Protection subscribers. To access customer service, subscribers can call a 1-800 number or send mail to a P.O. Box in Roswell, Georgia.

47.     Upon information and belief, GE MONEY BANK's Payment Protection call center is based in the Philippines. Employees are purportedly trained to assist subscribers with all

questions, including inquiries concerning canceling memberships, plan benefits and filing claims.

48.     GE MONEY BANK has established its customer service system in such a way that it is difficult for subscribers to cancel Payment Protection, to get detailed information about claim benefits or restrictions, or to file claims.

49.     For example, upon information and belief, employees at GE MONEY BANK's Philippines call center are given authority to deny claims immediately over the phone, but do not have authority to approve claimants to receive benefits in the same manner.

50.     Further, when claims for Payment Protection benefits are denied, GE MONEY BANK has not implemented a process through which subscribers' Payment Protection premiums are refunded, even if the subscribers are deemed to be *per se* ineligible for Payment Protection benefits. In fact, if subscribers are denied Payment Protection benefits, GE MONEY BANK neither affirmatively removes subscribers from Payment Protection enrollment going forward, nor is it GE MONEY BANK's policy to inform subscribers of their continued obligations pay for Payment Protection even though they have been deemed to be ineligible for benefits.

51.     GE MONEY BANK is one of the largest issuers of credit cards in the world. Payment Protection is a profit center for GE MONEY BANK and serves the Companys' interest in generating fee income, to the detriment of its most vulnerable customers.

52.     Although heralded as coverage designed "help" subscribers in their "times of need", the Payment Protection device is designed to prey on the financially insecure and is virtually worthless because of the numerous restrictions that are imposed, because of the exclusions of benefits, and because of the administrative and bureaucratic hurdles that are placed

in the way of Wisconsin subscribers who attempt to secure payments from GE MONEY BANK under Payment Protection coverage.

## FACTUAL ALLEGATIONS AS TO CHRISTINE CLEMINS

53.     Plaintiff Christine Clemins is a resident of Cudahy, Wisconsin.

54.     Ms. Clemins signed up for a Wal-Mart Credit Card issued by GE MONEY BANK in Deember of 2004, and a Sam's Club Credit Card issued by GE MONEY BANK in January of 2005.

55.     At all times, from the submission of her credit card applications through and including the present, Ms. Clemins was unemployed and receiving disability benefits.

56.     After receiving the credit cards in the mail, Ms. Clemins called each to activate the cards.  At those times, GE MONEY BANK enrolled her in the Payment Protection plan.

57.     Ms. Clemins purchased Payment Protection from GE MONEY BANK because she expected that she would be eligible for the benefits touted by GE MONEY BANK.

58.     At the time Ms. Clemins enrolled in Payment Protection, no representative of the GE MONEY BANK explained the terms and conditions surrounding Payment Protection to her.

59.     Ms. Clemins did not receive written materials explaining the terms and conditions of Payment Protection before being enrolled in the program.

60.     At the time Ms. Clemins enrolled in Payment Protection, no representative of GE MONEY BANK asked if she was unemployed or receiving disability benefits.  Ms. Clemins was never told that being disabled could prevent her from being eligible for Payment Protection coverage or benefits.

61.     GE MONEY BANK never informed Ms. Clemins that being disabled by their definition would be a bar to her receiving benefits from Payment Protection.

13

62.     Ms. Clemins paid monthly premiums for Payment Protection on both of her GE MONEY BANK accounts until their cancellation in or around July 2009. Upon information and belief, Ms. Clemins paid monthly premiums of $1.66 for every $100 of monthly account balance. These Payment Protection charges made by GE MONEY BANK, and paid by Ms. Clemins, can be readily compiled and calculated by GE MONEY BANK.

### FACTUAL ALLEGATIONS AS TO ROSE ROWLEY

63.     Plaintiff Rose Rowley is a resident of Niagara, Wisconsin.

64.     Since approximately 2004, Ms. Rowley has had a Wal-Mart Credit Card issued by GE MONEY BANK.  Ms. Rowley applied for her Wal-Mart Credit Card at a local Wal-Mart store. Upon information and belief, several months after becoming a card member, she became enrolled in GE MONEY BANK's Payment Protection plan.

65.     Ms. Rowley does not recall ever agreeing to enrollment for Payment Protection coverage. Upon information and belief, Ms. Rowley is a victim of "slamming;" she has never consented to Payment Protection coverage.

66.     Ms. Rowley was employed as a medical transcriptionist at the time she became enrolled in Payment Protection. No one from GE MONEY BANK ever asked Ms. Rowley about her employment status before involuntarily enrolling her in Payment Protection.

67.     At the time Ms. Rowley was involuntarily enrolled in Payment Protection, no one from GE MONEY BANK explained the terms and conditions surrounding Payment Protection to her.

68.     Ms. Rowley did not receive written materials explaining the terms and conditions of Payment Protection before being enrolled in the program.

14

69.     After becoming enrolled in Payment Protection, Ms. Rowley received the welcome package from GE MONEY BANK with written materials outlining the plan. These materials were confusing and unclear and in small print.

70.     Ms. Rowley only continued to pay for Payment Protection from GE MONEY BANK because she expected that she would be eligible for the benefits touted by GE MONEY BANK.

71.     Upon being terminated by her employer, Ms. Rowley applied to GE MONEY BANK Payment Protection to activate the benefits in summer 2010. Her requests to GE MONEY BANK were denied shortly thereafter because GE MONEY BANK determined that she was self-employed.

72.     At the time Ms. Rowley was involuntarily enrolled in Payment Protection, no one from GE MONEY BANK asked if she was self-employed or determined that she was self-employed. Ms. Rowley was never told that being self-employed could prevent her from being eligible for Payment Protection coverage or benefits.

73.     Ms. Rowley did not consider herself to be self-employed and did not believe she would be considered self-employed by the State of Wisconsin or GE MONEY BANK.

74.     GE MONEY BANK never informed Ms. Rowley that being self-employed by their definition would be a bar to her receiving benefits under the Payment Protection plan.

75.     Ms. Rowley has paid premiums of $1.66 for every $100 monthly for her GE MONEY BANK card, and, upon information and belief, has paid approximately $750.00 in total for Payment Protection to GE MONEY BANK over the last several years.

76.     GE MONEY BANK has not refunded the money Ms. Rowley paid towards her Payment Protection premiums after deeming her ineligible for benefits due to loss of

employment, nor has GE MONEY BANK affirmatively disenrolled Ms. Rowley from its Payment Protection plan due to her ineligibility to receive benefits. To date, Ms. Rowley continues to incur charges for Payment Protection.

## TOLLING OF THE STATUTE OF LIMITATIONS

77. Any applicable statutes of limitation have been tolled by GE MONEY BANK's knowing and active concealment of the facts as alleged herein. Plaintiffs and members of the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and members of the Class could not reasonably have discovered the true nature of the Payment Protection plan.

78. GE MONEY BANK is and has been under a continuing duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of the Payment Protection plan. Because of its knowing, affirmative, and/or active concealment of the true character, quality, and nature of the plan, GE MONEY BANK is estopped from relying on any statutes of limitation in their defense of this action.

## CLASS ACTION ALLEGATIONS

79. Plaintiffs bring this action on their own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

80. Plaintiffs bring this action as class representatives to recover damages and/or refunds from GE MONEY BANK's breach of contract, breach of the covenant of good faith and fair dealing, unconscionability, fraudulent representations and deceptive trade practices in violation of § 100.18, Wis. Stats., intentional omissions and misrepresentations, injunctive relief and declaratory judgment, rescission, and restitution for unjust enrichment.

16

81.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

82.     Plaintiffs seek certification of a class comprised of the following Wisconsin citizens and consumers:

> All residents of the State of Wisconsin who paid for Payment Protection ("Payment Protection Subscribers") at all times the product was sold.

83.     Plaintiffs seek certification of the following subclasses comprised of the following Wisconsin Citizens and consumers:

> A.     All citizens of the State of Wisconsin who were not eligible for full benefits, or whose eligibility for benefits were limited by express exclusions, including but not limited to those Payment Protection Subscribers who were retired, self-employed or part-time or seasonal workers, or were disabled, either at the time that they were solicited for and made payments to GE MONEY BANK for Payment Protection, or any time thereafter while continuing to pay for Payment Protection.
>
> B.     All citizens of the State of Wisconsin who did not expressly consent to sign up and pay for Payment Protection.

84.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

85.     Excluded from the Class are:

> (a)     Defendants and any entities in which Defendants have a controlling interest;
>
> (a)     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;
>
> (b)     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

(c)     Persons or entities with claims for personal injury, wrongful death and/or emotional distress;

(d)     All persons or entities that properly execute and timely file a request for exclusion from the Class;

(e)     Any attorneys representing the Plaintiffs or the Class; and

(f)     All governmental entities.

86.     <u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>. The Class is comprised of over 100 people and possibly hundreds of thousands of individuals who were GE MONEY BANK customers, the joinder of which in one action would be impracticable. The exact number or identification of the Class members is presently unknown, however, the number and identity of the Class members is ascertainable from GE MONEY BANK's records. In addition to rolls maintained by the Defendants and their agents, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means. The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

87.     <u>Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class. The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

(a)     Whether GE MONEY BANK's sales, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of Wisconsin law;

(b)     To the extent applicable, whether any purported arbitration clause and/or class action waiver in GE MONEY BANK's Credit Card Agreement, Card Security Program Agreement, Account Security Program Agreement, Card Security Debt Cancellation Program Agreement, and/or

Account Security Debt Cancellation Program Agreement are unconscionable and therefore would be unenforceable;

(c) Whether GE MONEY BANK's imposition of Payment Protection on individuals who did not sign up for it is unlawful;

(d) Whether GE MONEY BANK's marketing of Payment Protection to individuals ineligible for certain benefits is misleading and/or in bad faith;

(e) Whether GE MONEY BANK's administration of the Payment Protection program has been conducted in bad faith;

(f) Whether Plaintiffs and the Class members are entitled to restitution of all amounts acquired by GE MONEY BANK through its common and uniform scheme;

(g) Whether Plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by GE MONEY BANK;

(h) Whether Plaintiffs and the Class members are entitled to prospective injunctive relief enjoining GE MONEY BANK from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

(i) Whether Plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of GE MONEY BANK's wrongful scheme.

88.    <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>. Plaintiffs assert claims that are typical of the entire Class, having all been targeted by GE MONEY BANK as consumers and who were improperly assessed, and paid, charges for Payment Protection. Plaintiffs and the Class members have similarly suffered harm arising from GE MONEY BANK's violations of the law as alleged in this Complaint.

89.    <u>Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>. Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent. Plaintiffs will prosecute this action vigorously for the benefit of the entire Class. Plaintiffs are represented by

19

experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel. Class counsel have litigated numerous class actions, and intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiffs and class counsel can and will fairly and adequately protect the interests of all of the Members of the Class.

90.     <u>Superiority – Fed. R. Civ. P. 23(b)(3)</u>. The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Class have suffered irreparable harm as a result of GE MONEY BANK's fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of each individual Class members' claims, no Class members could afford to individually seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as GE MONEY BANK continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and GE MONEY BANK would be permitted to retain the proceeds of its violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT ONE
## BREACH OF CONTRACT

91.     Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

92.     Plaintiffs and other Class members purchased Payment Protection coverage from GE MONEY BANK  with the justified expectation that they were eligible for the benefits

offered by GE MONEY BANK's Payment Protection plan, or were enrolled in Payment Protection without their assent.

93.     Plaintiffs contracted with GE MONEY BANK for Payment Protection benefits, or were involuntarily enrolled in Payment Protection without their assent.

94.     Plaintiffs and other Class members paid monthly premiums for this service, in some cases unknowingly, to obtain the purported benefits of Payment Protection.

95.     Upon information and belief, the terms and conditions of this agreement are embodied in written materials in the possession of GE MONEY BANK.

96.     These terms and conditions were never provided to Plaintiffs and other Class members before they were enrolled for Payment Protection. Some Class members, possibly including Plaintiffs, never received these terms and conditions.

97.     Plaintiffs and the Class members have fulfilled their obligation under the sales contract by paying the Payment Protection premiums.

98.     Despite the full performance by Plaintiffs and other Class members, GE MONEY BANK did notprovide Plaintiffs or other Class members with the benefits for which they had paid or did not obtain the necessary permission of Class members before enrolling them in Payment Protection. Accordingly, to the extent that a contract has been fully formed between GE MONEY BANK and Plaintiffs and other Class members, GE MONEY BANK has materially breached the contract, which has resulted in harm to Plaintiffs and other Class members, who did not receive the benefit of their bargain.

99.     Alternatively, to the extent GE MONEY BANK enrolled Plaintiffs and Class Members without their consent, Plaintiffs are entiled to rescission, with a return of all charges.

100.     Moreover, to the extent the underlying credit card agreements between Plaintiffs and the Class, on the one hand, and GE MONEY BANK, on the other, did not provide authorization for charges for Payment Protection, GE MONEY BANK is in breach of those agreements to the extent they imposed credit protection charges on those who had not authorized such payment, causing damage to consumers.

101.     By reason of the foregoing, GE MONEY BANK has breached the parties' contract and is liable to Plaintiffs and the other members of the Class.

<div align="center">

**COUNT TWO**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

</div>

102.     Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

103.     In Wisconsin, a covenant of good faith and fair dealing is implied in every contract. Wisconsin has adopted the concepts of general duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205

104.     As a direct and proximate result of GE MONEY BANK's actions as described herein, Plaintiffs and the Class have suffered, and continue to suffer, injury in fact and have lost money as a result of GE MONEY BANK's breach.

105.     Plaintiffs and other Class members purchased Payment Protection with the expectation that they would receive benefits after a qualifying or "life changing" event, as described in GE MONEY BANK's advertising, or were enrolled in Payment Protection without their affirmative assent.

106.     Good faith is an element of the contract pertaining to the Payment Protection plan. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and

discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

107.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

108.    Under the Payment Protection Agreement, GE MONEY BANK  impliedly promised to administer these contract obligations in accordance with principles of good faith and fair dealing.

109.    For those Plaintiffs and other Class members that knowingly purchased Payment Protection, they did so with the justifiable expectation that they were eligible to receive the benefits offered by GE MONEY BANK, that the benefits were the same as those represented to them though marketing and advertising, and that GE MONEY BANK  had in place a process through which those benefits could fairly and efficiently be administrated.

110.    For those Plaintiffs and other Class members who were enrolled in Payment Protection without their affirmative assent, upon learning that they had been involuntarily enrolled in Payment Protection, they too had the justifiable expectation that they could either cancel Payment Protection and get all of their money back, or were eligible to receive the benefits offered by GE MONEY BANK, that the benefits were the same as those represented

though marketing and advertising, and that GE MONEY BANK had in place a process through which those benefits could fairly and efficiently be administrated.

111. As set forth herein, Plaintiffs and other Class members have not obtained the benefit of their bargain from GE MONEY BANK, or reasonable benefits in light of being involuntarily enrolled, and the essential purpose of the Payment Protection agreement has been frustrated.

112. By reason of the foregoing, GE MONEY BANK has breached the covenant of good faith inherent in the Payment Protection agreement and is liable to Plaintiffa and the other members of the Class.

113. Plaintiffa and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Payment Protection agreement.

114. Plaintiffs and members of the Class have sustained damages as a result of GE MONEY BANK's breach of the covenant of good faith and fair dealing.

## COUNT THREE
## UNCONSCIONABILITY

115. Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as though set out here word for word.

116. The policies and practices associated with GE MONEY BANK's Payment Protection plans, which go by the names "CARD SECURITY", "ACCOUNT SECURITY", and other monikers, are substantively and procedurally unconscionable in the following material respects, among others:

      a.    GE MONEY BANK unilaterally imposes Payment Protection upon its customers' credit card accounts, thereby failing to disclose to customers that Payment Protection is an optional plan and that they have the option to "opt out" of Payment Protection;

24

b.      GE MONEY BANK did not obtain affirmative consent from subscribers prior to enrolling them in Payment Protection;

c.      GE MONEY BANK does not provide the terms and conditions of Payment Protection to subscribers until <u>after</u> they have enrolled in the plan;

d.      The written documents that GE MONEY BANK does eventually provide to subscribers, referred to by GE MONEY BANK as a Welcome Kit, do not provide subscribers with sufficient information to understand the terms and conditions of Payment Protection;

e.      The Welcome Kit, along with other related documents and written materials in the possession of GE MONEY BANK, are contracts of adhesion in that they are standardized forms, imposed and drafted by GE MONEY BANK, which is a party of vastly superior bargaining strength, and only relegate to the subscriber the opportunity to adhere to them or reject the agreement in its entirety;

f.      These documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading, in that they do not require affirmative customer consent (like a signature) and do not unambiguously state that certain customers are *per se* ineligible to receive benefits, even though GE MONEY BANK had the information and means of determining eligibility prior to enrolling these customers in Payment Protection;

g.      GE MONEY BANK does not alert customers that certain individuals are *per se* ineligible for Payment Protection benefits, including but not limited to retired, unemployed, self-employed, employed by family members, persons employed on a part-time or seasonal basis and those that are disabled;

h.      The amount charged in fees for Payment Protection is not rationally related to the amount of value Payment Protection provides to subscribers, nor is the value of Payment Protection computable or discernable by subscribers;

i.      GE MONEY BANK charges exorbitant fees for Payment Protection, much more than the value of the benefits offered or paid out to subscribers, and is able to do so because GE MONEY BANK does not identify Payment Protection as an insurance product, which would require it to provide fees and claims-paid data to state authorities for review and regulation;

j.      The formula GE MONEY BANK uses to compute Payment Protection fees is misleading such that subscribers are unable to budget for this

product or understand its overall cost in order to determine its value to subscribers; and

    k.    GE MONEY BANK operates its customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection coverage, and file claims, in order for GE MONEY BANK to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers.

117.    Considering the great business acumen and experience of GE MONEY BANK in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

118.    The imposition of Payment Protection fees that excessively exceed the amount of claims-paid by a rate higher than any insurance product would be permitted to charge for premiums is itself unconscionable. Such fees are not reasonably related to GE MONEY BANK's costs of administering the plan and providing the benefits offered.

119.    Plaintiffs and members of the Class have sustained damages as a result of GE MONEY BANK's unconscionable policies and practices as alleged herein.

## COUNT FOUR
## FRAUDULENT REPRESENTATIONS AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF § 100.18(1), WIS. STATS

120.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

121.    Through advertisements and marketing representations, GE MONEY BANK intended to and did misrepresent to Plaintiffs and the Class, at the time of purchase and at all relevant times, the eligibility, terms, and conditions of its Payment Protection coverage.

26

122.    Specifically, GE MONEY BANK's advertisements stated that Plaintiffs and class members were eligible, would remain eligible, and would receive benefits under GE MONEY BANK's Payment Protection plan, when these representations were false and misleading.

123.    After and due to seeing and hearing GE MONEY BANK's advertisements and marketing representations, Plaintiffs reasonably believed, and Plaintiffs and the Class were reasonably likely to believe, that they were eligible, would remain eligible, and would receive benefits under GE MONEY BANK's Payment Protection plan.

124.    GE MONEY BANK  intended that Plaintiffs and the Class rely upon GE MONEY BANK's false, deceptive and misleading representations regarding the quality and character of its Payment Protection plan.

125.    GE MONEY BANK's representations regarding the benefits and exclusions and limitations of its Payment Protection plan were material to Plaintiffs and the Class in deciding to purchase the Payment Protection.

126.    Plaintiffs and the Class would not have purchased GE MONEY BANK's Payment Protection altogether, or would have paid less for these products, had they known, or had reason to have known, the terms and conditions pertaining to GE MONEY BANK's Payment Protection coverage.

127.    GE MONEY BANK's advertisements and marketing concerning its Payment Protection plan and coverage were false, deceptive and/or fraudulent, and induced Plaintiffs and the other members of the Class to make purchases that they would not have made otherwise if they had been in possession of all of the material facts.

128.    GE MONEY BANK  also deceptively enrolled some Class members in Payment Protection without their affirmative consent and made it difficult for Class members to cancel the

Payment Protection or obtain a refund for the premiums they unknowingly paid for a product they did not want.

129.     As a result of GE MONEY BANK's deceptive conduct and practices, Plaintiffs and the Class suffered pecuniary loss in an amount not less than the purchase price of GE MONEY BANK's Payment Protection plan, or a portion thereof, plus interest.

<div align="center">

**COUNT FIVE**
**INTENTIONAL OMISSIONS AND MISREPRESENTATIONS**

</div>

130.     Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

131.     Through its advertising and marketing, GE MONEY BANK  intended to and did misrepresent to Class members, at the time of purchase and at all relevant times thereafter, the eligibility, enrollment, terms and conditions and administrative process of its Payment Protection coverage.

132.     Specifically, GE MONEY BANK  stated that Class members would be eligible for benefits, would remain eligible for benefits, and would receive benefits, under its Payment Protection plan, when these representations were false and misleading.

133.     Some Class members never agreed to be enrolled in Payment Protection.  Failing to inform these individuals that they had been enrolled in a program for which they did not consent was a material omission.

134.     Individuals were justified in believing that their credit card company would not and did not involuntarily enroll them in programs that they did not assent to.

135.     However, if and upon learning that they had been enrolled, these individuals could reasonably believe that they could either cancel Payment Protection and get all of their

money back, or were eligible, would remain eligible, and would receive benefits under, GE MONEY BANK's Payment Protection plan.

136. For those that knowingly purchased Payment Protection, after and as a result of seeing and hearing GE MONEY BANK's advertisements and marketing representations, Class members reasonably believed, and Class members were reasonably likely to believe, that they were eligible, would remain eligible, and would receive benefits under, GE MONEY BANK's Payment Protection plan.

137. GE MONEY BANK intended that Plaintiffs and the Class rely upon these false, deceptive, and misleading representations regarding the quality and character of its Payment Protection plan.

138. GE MONEY BANK's representations regarding the benefits, exclusions and limitations of its Payment Protection plan were material to the Class members in deciding to purchase the Credit Protection.

139. Class members would not have purchased GE MONEY BANK's Payment Protection altogether, or would have demanded to pay less for these products, had they known, or had reason to have known, the limitations and exclusions as written and as applied to the terms and conditions of GE MONEY BANK's Payment Protection coverage.

140. GE MONEY BANK's advertisements and marketing concerning Payment Protection coverage were false, deceptive, and/or fraudulent, and induced members of the Class to pay money that they would not have otherwise paid if they had been in possession of all of the material facts.

141.    As a result of GE MONEY BANK's deceptive conduct and practices, Plaintiffs

and the Class suffered pecuniary loss in an amount not less than the purchase price of GE

MONEY BANK's Payment Protection plan, or a portion thereof, plus interest.

<div align="center">

**COUNT SIX**
**INJUNCTIVE RELIEF**
**PAYMENT PROTECTION RESTITUTION**

</div>

142.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as

though set out here word for word.

143.    Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all

members of the Class who made payments to GE MONEY BANK  for Payment Protection.  The

Plaintiffs ask the Court to grant the following relief:

a.    a refund of all Payment Protection payments made to GE MONEY
      BANK;

b.    a refund to any consumers who were ineligible for benefits, or who faced
      additional restrictions to receive benefits as a result of their health or
      employment status,, at the time they were sold Payment Protection by GE
      MONEY BANK  or at any time they paid for Payment Protection; and/or

c.    a refund to consumers who were otherwise not eligible for Payment
      Protection benefits at any time they paid for Payment Protection; and/or


144.    Further, Plaintiffs seek injunctive relief enjoining GE MONEY BANK  from

continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme described

in this Complaint.

<div align="center">

**COUNT SEVEN**
**DECLARATORY RELIEF**

</div>

145.    Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as

though set out here word for word.

<div align="center">

30

</div>

146.     Plaintiffs seek a Declaratory Judgment finding that the conduct of GE MONEY

BANK  is in violation of § 100.18(1), Wis. Stats., and enjoining it from continuing in such

conduct.

<div align="center">

**COUNT EIGHT**
**UNJUST ENRICHMENT**

</div>

147.     Plaintiffs restate and reallege the preceding paragraphs of this Complaint as

though set out here word for word.

148.     In seeking to sell Payment Protection to Plaintiffs and members of the putative

Class, GE MONEY BANK  withheld material terms from consumers prior to activation of

Payment Protection charges, including the express benefits, limitations, restrictions, and

exclusions associated with the product.

149.     GE MONEY BANK  was unjustly enriched by the practice of signing people up

for Payment Protection that never agreed to be plan members.

150.     GE MONEY BANK  was unjustly enriched by the practice of withholding

material terms of Payment Protection until after the product was charged to consumers' credit

cards.

151.     GE MONEY BANK  was unjustly enriched by their business practice of making

it so impermissibly difficult for consumers to actually receive coverage under Payment

Protection that the service was virtually worthless.  Such unconscionable acts include, but are not

limited to:

    a.     Denying claims over the phone without written explanation;

    b.     Denying claims due to limitations and/or exclusions that were not
        disclosed in whole or in part to subscribers before enrolling in the plan;

    c.     Denying claims without sufficient investigation;

<div style="padding-left: 2em;">

d.      Requiring claimants to submit excessive and duplicate documentation;

e.      Refusing to credit or reverse charges for Class members who did not voluntarily enroll in the plan, and/or;

f.      Establishing a telephone number that does not allow for claimants to speak to a live person, a person in a timely manner, or a person that is properly trained to handle Payment Protection claims, in order for the subscriber to successfully file a claim.

</div>

152.    GE MONEY BANK  was unjustly enriched by charging Plaintiffs and the Class members for illusory benefits.

153.    GE MONEY BANK  was unjustly enriched by charging Plaintiffs and the Class members who were disabled or were otherwise not eligible to receive payments by the terms of the Payment Protection plan.

154.    Overall, GE MONEY BANK  was unjustly enriched by charging Plaintiffs and the Class members for an effectively worthless product with illusory benefits; while marketed as a benefit to consumers, Payment Protection was really a benefit to GE MONEY BANK  – who gathered fees for the illusory service, and even charged Finance Charges during periods of "benefits", at consumers' expense.

155.    As a result of GE MONEY BANK's actions, which constitute unjust enrichment, Plaintiffs and Class members suffered actual damages for which GE MONEY BANK  is liable. GE MONEY BANK's liability for those damages should be measured by the extent of its unjust enrichment.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray:

A.     That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs are proper class representatives and the best practicable notice of this action is to be provided to members of the Class represented by the Plaintiffs;

B.     That judgment be entered against GE MONEY BANK and in favor of Plaintiffs and the Class on the Causes of Action in this Complaint, for injunctive and equitable relief as requested above, and for actual, compensatory, punitive, and treble damages in an amount to be determined at trial;

C.     That Declaratory Judgment be entered against GE MONEY BANK finding that the conduct of GE MONEY BANK is in violation of § 100.18(1), Wis. Stats., and enjoining GE MONEY BANK from continuing in such conduct;

D.     That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against GE MONEY BANK;

E.     For all other and further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury consisting of twelve persons on all issues so triable.

February 24, 2011 Respectfully Submitted,

**ADEMI & O'REILLY LLP**

By:  /S/ COREY MATHER
Guri Ademi (SBN: 1021729)
Shpetim Ademi (SBN: 1026973)
David J. Syrios (SBN: 1045779)
Corey Mather (SBN: 1046210)

33

3620 East Layton Ave.
Cudahy, Wisconsin 53110
Telephone: (866) 264-3995
Facsimile: (414) 482-8001
gademi@ademilaw.com
sademi@ademilaw.com
dsyrios@ademilaw.com
cmather@ademilaw.com

**LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP**
Wendy R. Fleishman
Rachel Geman
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:     (212) 355-9500
Facsimile:     (212) 355-9592

**LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP**
Michael W. Sobol
Allison Elgart
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:     (415) 956-1000
Facsimile:     (415) 956-1008

**GOLOMB & HONIK, P.C.**
Ruben Honik
Richard M. Golomb
Kenneth J. Grunfeld
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone: (215) 985-9177

**CARNEY WILLIAMS BATES
BOZEMAN & PULLIAM, PLLC**
Allen Carney
Marcus Bozeman
Randall K. Pulliam
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Tel: (501) 312-8500
Fax: (501) 312-8505

*Counsel for Plaintiff and Proposed Class*