# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTINE T. CLEMINS, et al.,**
        **Plaintiffs,**

     v.                                              Case No. 11-CV-00210

**GE MONEY BANK,**
        **Defendant.**

## DECISION AND ORDER

Plaintiffs Christine Clemins and Rose Rowley bring this putative class action against defendant GE Money Bank (now known as GE Capital Retail Bank) raising claims related to retail credit cards defendant issued to plaintiffs. Jurisdiction is based on diversity of citizenship. The credit card contracts between plaintiffs and defendant contain provisions requiring arbitration of disputes and waiving plaintiffs' right to bring class actions. Defendant now moves to enforce these provisions.

This action involves Clemins' Wal-Mart and Sam's Club cards and Rowley's Wal-Mart card. The action arises out of defendant's "debt cancellation program," an optional service which enables a customer to have his or her credit card debt cancelled in times of financial hardship. Customers pay a monthly fee for the program which appears on their credit card statement. Clemins alleges that she enrolled in the program in response to a solicitation, but subsequently learned that she was ineligible for it because she was unemployed and receiving disability benefits. Rowley alleges that defendant initially enrolled her in the program without her consent (a practice known as "slamming"), but that she remained in it because defendant advised her it would protect her if she became

unemployed. When she applied for relief, however, defendant informed her that she was ineligible because it regarded her as self-employed.

Plaintiffs claim that defendant breached both the credit card agreements ("cardholder agreements") and the agreements governing the debt cancellation program ("debt cancellation agreements"). They also bring claims for unjust enrichment and common law and statutory claims alleging that defendant intentionally misrepresented the terms of the debt cancellation program. Defendant asks me to compel arbitration pursuant to § 4 of the Federal Arbitration Act ("FAA") and to stay or dismiss the case pursuant to § 3 of the Act arguing that the cardholder and debt cancellation agreements require plaintiffs to individually arbitrate. The arbitration agreements are included in contracts that evidence transactions involving interstate commerce and are, thus, governed by the FAA. 9 U.S.C. § 2. In evaluating a motion to compel arbitration under the FAA, I review the evidence to determine whether the parties have entered into a valid arbitration agreement and whether the claims asserted fall within the scope of the agreement. *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). In doing so, I apply a standard of review similar to the summary judgment standard set out in Fed. R. Civ. P. 56. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). I consider whether there is a genuine issue of material fact concerning the existence of the arbitration agreement and take all reasonable inferences in favor of the non-movant. *Id.* To determine the validity of an arbitration agreement, I apply state contract law. *See* 9 U.S.C. § 2 (stating that an arbitration agreement is enforceable "save upon such grounds as exist at law or in equity for the

revocation of any contract"); *see also First Options of Chicago, Inv. v. Kaplan*, 514 U.S. 938, 944 (1995).

The parties disagree about which state's law governs their contracts. Defendant argues that Utah law governs because the contracts expressly call for the application of Utah law to the extent it is relevant under the FAA. Plaintiffs argue that Wisconsin law governs because plaintiffs are Wisconsin residents and the choice-of-law provision is unenforceable because it violates an important public policy of Wisconsin, namely allowing plaintiffs to bring claims under Wisconsin's Deceptive Trade Practices Act. *See Bush v. Nat'l Sch. Studios, Inc.*, 139 Wis. 2d 635, 642 (S. Ct. 1987) (prohibiting a court from enforcing a choice-of-law provision that undermines "important public policies of a state whose law would be applicable if the parties [sic] choice of law provision were disregarded"). I need not, however, resolve this dispute because, as discussed below, the result is the same under Utah or Wisconsin law.[1]

Plaintiffs' first argue that they did not enter into arbitration agreements with defendant. I disagree. Plaintiffs signed applications for credit cards that included a provision stating that "[t]he [cardholder agreement's] terms include an arbitration provision that may substantially limit [a cardholder's] rights." (Decl. Martha Koehler Ex. A, Ex. J, Ex. R, ECF No. 34-1.) Although this provision did not create an arbitration agreement, it put plaintiffs on notice that their contracts would include such an agreement. Subsequently,

---

[1] Possibly, in the absence of the choice-of-law provision, Michigan law would govern Rowley's claims because Rowley applied for her credit card at a store in Michigan and about a year after opening her account changed her billing address to a Michigan address. Regardless, I need not resolve this issue because plaintiffs do not argue that any Michigan public policy trumps the choice-of-law provision.

3

along with their credit cards, defendant mailed plaintiffs copies of their contracts and such contracts included a provision requiring plaintiffs to individually arbitrate disputes related to their credit card accounts and/or their relationship with defendant.[2] Plaintiffs activated and used the cards.

The cardholder agreements also gave defendant the right to amend them, and defendant amended each contract at least twice by including a "bill stuffer" in plaintiffs' monthly invoices. Each bill stuffer gave plaintiffs 30-days notice of changes to their cardholder agreements and informed them that they could avoid the new terms by surrendering their cards. Most of these notices also advised plaintiffs that they could opt out of arbitration by providing defendant with written notice. If a customer opted out of arbitration, the other provisions of the cardholder agreements remained in effect.[3] Neither plaintiff cancelled her card or opted out of arbitration. They both paid their bills and continued using their cards.

---

[2] Plaintiffs' affidavits state that along with their credit cards they received "a pamphlet consisting of a number of pages written in very small print." (Decl. Christine Clemins ¶¶ 8, 11, ECF No. 14; Decl. of Rose Rowley ¶ 11, ECF No. 15.) Plaintiffs do not recall reading these pamphlets, but defendant states that they contained the complete text of the cardholder agreements.

[3] Plaintiffs argue that the notices of amendment for their Wal-Mart credit cards did not actually give them the right to opt-out of arbitration because the notices provided that any rejection would apply "only to this Arbitration Provision and not to any other arbitration provision or arbitration agreement, which may apply to a prior agreement with Us." (Koehler Decl. Ex. E. § V, Ex. G § VI.) Plaintiffs read this language as allowing a customer to reject the amendment but not the arbitration requirement in the original cardholder agreements. I disagree with this interpretation. The notices of amendment specified that, if a customer rejected the arbitration provision contained in the amendment, "neither [the customer] nor [GE Money Bank] will have the right to require arbitration of any Claim." (*Id.* Ex. E §§ V, VII, Ex. G §§ VI, VIII, Ex. V § 20.)

4

Thus, I conclude that plaintiffs entered into valid arbitration agreements with defendant. *See* Restatement (Second) of Contracts § 17 (1981) (a contract is formed where there is "a manifestation of mutual assent to the exchange"); *see also Wis. Auto Title Loans, Inc. v. Jones*, 290 Wis. 2d 514, 544 (2006) (stating that contracts of adhesion are generally enforceable in Wisconsin); Utah Code § 25-5-4(2)(e) (specifically exempting credit card agreements from Utah's statute of frauds where the debtor was provided with a written copy of the terms of the agreement, the terms stated that use of the card would constitute acceptance, and the debtor used the card after receiving the terms); Utah Code § 70C-4-102(2) (allowing a credit card company to amend the terms of a contract by sending a customer notice). Even if plaintiffs did not read the cardholder agreements or the proposed amendments, the contracts are still binding because plaintiffs had the opportunity to do so. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome.").

I also conclude that the arbitration agreements require plaintiffs to arbitrate the claims described in their complaint. Where the parties enter into a valid arbitration agreement, grievances between them are presumed to be arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

Clemins' Sam's Club cardholder agreement requires her to arbitrate any dispute "that relates in any way to your Account or your relationship with [defendant]" and Rowley's Wal-Mart cardholder agreement requires her to arbitrate any dispute "that relates in any way to your Account, card or your relationship with [defendant]." (Koehler Decl. Ex. L § E, Ex. V § 20.) All of plaintiffs' claims relate to their relationship with defendant. The phrase "related to" is "'extremely broad and capable of expansive reach.'" *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012) (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). Thus, I need not decide whether the debt cancellation agreements for these two cards also contain arbitration provisions. "[W]here the parties enter into two agreements—though only one contains an arbitration clause, and the plaintiff brings a cause of action based . . . on conduct contrary to the agreement that does not have the arbitration clause, the parties can be compelled to arbitrate . . . [if] the [arbitration clause] is broad enough to encompass their dispute." *Id.* at 1033.

The arbitration provision in Clemins' Wal-Mart cardholder agreement is somewhat narrower but still requires arbitration. It requires Clemins to arbitrate any dispute "that arises from or relates to your credit card account, the relationships that result from your account, this Agreement or any prior agreement or credit card account." (Koehler Decl. Ex. G § VI.) Clemins' claims challenge defendant's administration of the debt cancellation program attached to her Wal-Mart credit card and thus relate to her credit card account. Clemins purchased the debt cancellation program to protect herself from her credit card debt, and paid for the program based on the balance on her card and as part of her monthly credit card bill. Also, the debt cancellation agreement is one of the relationships

6

that resulted from her credit card account. She enrolled in the program because she had opened the underlying account.

I further conclude that Clemins' debt cancellation agreement requires her to arbitrate the claims related to her Wal-Mart card. Clemins enrolled her Wal-Mart card in the debt cancellation program in response to a phone solicitation. Defendant states that it subsequently sent her a confirmation letter and a "Card Security Debt Cancellation Agreement," (Koehler Decl. Ex. D.), Section 11.6 of which stated, "This Agreement is incorporated into and is a part of your Cardholder Agreement." (*Id.*) And § 11.8 provided that "[a]ny arbitration provision that may apply to your Cardholder Agreement shall also apply with respect to this Agreement and the Program." (*Id.*) The agreement also gave Clemins the right to terminate her enrollment and promised to refund all program fees if she did so within 60 days. (*Id.* § 10.4.) Clemins did not cancel her enrollment. She states that she does not recall receiving a document relating to the debt cancellation service, but this is not sufficient to create a genuine issue of material fact. *See Tinder*, 305 F.3d at 736 ("[Plaintiff] asserted only that she does not remember receiving or seeing the brochure, whereas the uncontroverted affidavits from [defendants] indicate that the brochure was definitely sent and presumably received with her paycheck.").

Alternatively, plaintiffs argue that the arbitration provisions at issue are unconscionable and, therefore, unenforceable.[4] Wisconsin and Utah recognize

---

[4] Defendant claims that Clemins is precluded from litigating the question of unconscionability with respect to her Wal-Mart cardholder agreement. The agreement requires Clemins to arbitrate all "claims," and defines "claim" to include disputes related to "the enforceability or scope of [the arbitration] provision." (Koehler Decl. Ex. G § VI.) However, the agreement also states:

7

unconscionability and define it as "the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Wis. Auto Title Loans*, 290 Wis. 2d at 533; *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah S. Ct. 1998). In both states, courts analyze contracts to determine whether they are substantively and procedurally unconscionable. *Wis. Auto Title Loans*, 290 Wis. 2d at 532–34 ("A determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis."); *Ryan*, 972 P.2d at 402 ("[S]ubstantive unconscionability alone may support a finding of unconscionability [but] procedural unconscionability without any substantive imbalance will rarely render a contract unconscionable."). Substantive unconscionability focuses on the contents of a contract to see if its terms unreasonably oppress one of the parties. *Wis. Auto Title Loans*, 290 Wis. 2d at 536; *Ryan*, 972 P.2d at 403. Procedural unconscionability focuses on the formation of the contract to determine whether there was "a real and voluntary meeting of the minds." *Wis. Auto Title Loans*, 290 Wis. 2d at 534–35; *see also Ryan*, 972 P.2d at 403. The party seeking to invalidate the contract bears the burden of proof. *Wis. Auto Title Loans*, 290 Wis. 2d at 532; *Ryan*, 972 P.2d at 401.

---

> If you or We elect to arbitrate a Claim, neither you nor We will have the right: (1) to have a court or a jury decide the Claim; 2) to engage in discovery . . . to the same extent that you or We could in court; (3) to participate in a class action in court or in arbitration, either as a class representative or a class member; 4) to act as a private attorney general in court or in arbitration; or (5) to join or consolidate your Claim(s) with Claims of any other person. . . . *Only a court may determine the validity and effect of the language in this paragraph*.

(*Id.* (emphasis added).) Thus, the agreement is ambiguous and does not "clearly and unmistakably" give the arbitrator exclusive authority to decide whether the arbitration agreement is enforceable. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777 n.1 (2010). Therefore, I will consider plaintiffs' unconscionability arguments.

8

Plaintiffs argue that the arbitration agreements are substantively unconscionable because they contain class-action waivers that prevent plaintiffs from vindicating their rights. They assert that they cannot individually arbitrate their claims because it is not economically feasible to do so. Fees and costs would outweigh each plaintiff's potential recovery estimated to be less than $1000. They also point out that the class-action waiver is one-sided because defendant would never bring a class action against a customer. The problem that plaintiffs encounter, however, is that Utah law allows class-action waivers in consumer credit agreements, Utah Code § 70C-4-105, and the Wisconsin law striking class action waivers from arbitration agreements as unconscionable is preempted by the FAA. *See AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011). In *Coady v. Cross Country Bank*, the Wisconsin Court of Appeals held that a class-action waiver in an open-ended consumer credit agreement was unconscionable because it allowed the credit card company to cheat consumers out of small sums of money with impunity. 299 Wis. 2d 420, 746–47 (Ct. App. 2007). However, in *Concepcion*, the Supreme Court held that the FAA pre-empted similar case law in California because class proceedings are incompatible with the type of arbitration Congress envisioned when it enacted the FAA. *Concepcion*, 131 S. Ct. at 1748. According to the *Concepcion* Court, the goal of the FAA is to "facilitate streamlined proceedings" by ensuring that courts will enforce private agreements to individually arbitrate disputes. *Id.* at 1748–50. Allowing a state to require certain types of claims to be resolved through class proceedings frustrates this goal. *Id.* Thus, state laws striking class-action waivers from arbitration agreements on unconscionability grounds are preempted by the FAA. *Id.* at 1753.

9

Plaintiffs argue that *Concepcion* only prohibits states from making class-action waivers invalid *per se* and that a court can still find a class-action waiver to be unconscionable on a case-by-case basis. They claim that a class-action waiver is unenforceable if the evidence shows that it will in fact prevent a plaintiff from vindicating his or her legal rights. However, the *Concepcion* Court rejected this argument. In response to the dissent's concern that class-action waivers allow small-dollar claims to "slip through the legal system," the Court noted that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* Therefore, I cannot rely on Wisconsin's doctrine of unconscionability to strike the class-action waivers from the contracts. *See Litman v. Cellco Partnership*, 655 F.3d 225, 231 (3d Cir. 2011) ("We understand the holding of *Concepcion* to be both broad and clear: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA . . . ."); *Cottonwood Fin., Ltd. v. Estes*, 339 Wis. 2d 473, 482 (Ct. App. 2012) ("[T]he FAA preempts any state law that classifies an arbitration agreement as unconscionable, and therefore unenforceable, simply because the agreement prohibits an individual from proceeding as a member of a class.").

Plaintiffs also argue that the arbitration agreements are unenforceable under *Green Tree Financial Corporation–Alabama v. Randolph*, 531 U.S. 79 (2000), in which the Supreme Court held that an agreement to arbitrate a federal statutory claim is enforceable only if "'the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" *Id.* at 90 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*,

10

500 U.S. 20, 28 (1991)). The *Green Tree* Court recognized that Congress has the authority to limit the scope of the FAA by passing another federal law and reasoned that an arbitration agreement should not be enforced under the FAA if it would prevent a plaintiff from vindicating his or her rights under another federal statute. *Green Tree*, 531 U.S. at 89–90; *see also Gilmer*, 500 U.S. at 26 ("'[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler/Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The *Green Tree* reasoning does not appear to apply to state law claims because state laws cannot limit the scope of the FAA. *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 n.2 (9th Cir. 2012) (recognizing that *Green Tree* and similar decisions "are limited to federal statutory rights"); *see also James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005) ("It remains unclear whether the rationale of *Green Tree* applies to situations that do not involve the assertion of federal statutory rights."). Therefore, I decline to apply *Green Tree* to the present case.

*Concepcion* does not, however, prevent courts from striking all provisions from arbitration agreements on unconscionability grounds. 131 S. Ct. at 1746–48 (noting that courts can still apply general contract defenses so long as they do not require procedures fundamentally incompatible with individual arbitration); *see also Kilgore v. Keybank Nat'l Assoc.*, 673 F.3d 947, 963 (9th Cir. 2012) ("*Concepcion* did not overthrow the common law contract defense of unconscionability whenever an arbitration agreement is involved."). Thus, I will consider plaintiffs' other unconscionability arguments. Plaintiffs first contend that the agreements are substantively unconscionable because they require plaintiffs to

11

arbitrate before the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA") both of which, plaintiffs assert, are biased in favor of large corporations like defendant. Plaintiffs point out that the NAF entered into a consent decree with the Attorney General of Minnesota in connection with allegations of bias against consumers. (Decl. Corey Mather Ex. B, ECF No. 38-2.) Plaintiffs, however, present no evidence of bias on the part of the AAA. The AAA has voluntarily agreed to refrain from hearing disputes where: "The company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves a credit card bill or . . . a consumer finance matter." (Mather Decl. Ex. C, ECF No. 38-3.) However, this fact is insufficient to establish bias.

Plaintiffs next contend that the agreements are substantively unconscionable because they require a customer who appeals an award to pay the costs of the appeal (including arbitrator's time, room rental, etc.). First, it is not clear that all of the contracts require plaintiffs to pay these costs. Rowley's Wal-Mart cardholder agreement states that defendant will consider "in good faith" a request to pay additional fees on appeal. (Koehler Decl. Ex. V § 20.) Secondly, plaintiffs provide no information regarding the size of the costs. Thus, I lack sufficient information to determine whether such a provision is unconscionable. *See James*, 417 F.3d at 678–79 (noting the AAA has rules designed to protect consumers from high arbitration costs).

Finally, plaintiffs argue that the arbitration provision in Clemins' Wal-Mart cardholder agreement is substantively unconscionable because it allows a party to appeal only if an

12

award exceeds $100,000.[5] I agree with plaintiffs that this provision is substantively unconscionable. It gives defendant two bites at the apple in the rare case where a customer has a significant claim, and it prevents customers from appealing awards against defendant that they think are too low. *See Smith v. Americredit Fin. Servs., Inc.*, No. 09cv1076, 2012 WL 834784, at *3 (S.D. Cal. Mar. 12, 2012) (rejecting a similar contract provision under California's unconscionability doctrine). Because defendant would not likely have a claim for more than $100,000 against a single customer, the provision only favors defendant. This evidence of substantive unconscionability is, however, mitigated by a lack of procedural unconscionability.

When determining whether a contract is procedurally unconscionable, Wisconsin courts consider "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract." *Wis. Auto Title Loans*, 290 Wis. 2d at 534–35. Utah courts consider similar factors. *See Ryan*, 972 P.2d at 403. In the present case, defendant had greater business acumen and experience than plaintiffs, it drafted the contracts without their input, and it did not explain the agreements to them. Other credit cards, however, were available to

---

[5] Plaintiffs raise this argument with respect to all three arbitration agreements but Clemins' Sam's Club agreement and Rowley's Wal-Mart agreement do not restrict appeals to cases where the award is over $100,000. Instead, these agreements limit appeals to cases where the amount in controversy exceeds $100,000. (Koehler Decl. Ex. V. § 20, Ex. L § I(E) (stating that a party "may appeal decisions related to Claims of more than $100,000").) These provisions reasonably restrict appeals to cases involving large claims and do not favor defendant because they allow a credit card holder with a significant claim to appeal an award he or she believes is too low.

13

plaintiffs and the arbitration agreements were not offered on a take-it-or-leave-it basis. Defendant gave plaintiffs the chance to opt out of each arbitration agreement. While defendant included the opt-out provision in multi-page small-print bill stuffers, defendant highlighted it in bold in two different places and described it in straightforward language. Defendant states that in response to these bill stuffers at least 823 customers opted out of arbitration. Thus, I find that the arbitration provisions contained in plaintiffs' cardholder agreements were not procedurally unconscionable, and I will let the $100,000 threshold for appeals in Clemins' Wal-Mart cardholder agreement stand.

For the foregoing reasons, I conclude that the arbitration agreements are binding on plaintiffs and require arbitration of their claims. Therefore, I will grant defendant's motion to compel arbitration and stay further proceedings in the present case. *See* 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005))).

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss or stay the case and compel arbitration [Docket #33] is **GRANTED**. The proceedings in this case are **STAYED** pending individual arbitration of all of plaintiffs' claims.

Dated at Milwaukee, Wisconsin, this 20th day of November 2012.

                                              s/ Lynn Adelman
                                              _____
                                              LYNN ADELMAN
                                              District Judge